**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mauricio Flores, et al., | No. CV-18-04175-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| American Airlines Incorporated, et al., | |
| Defendants. | |

Plaintiffs Mauricio Flores and Claudia Flores (collectively "Mr. Flores") allege claims for negligence and gross negligence against Defendant Skywest, Incorporated ("Skywest"). This order grants Skywest's Motion for Summary Judgment (the "Motion"). (Doc. 55.)[1]

**I.   BACKGROUND FACTS**

Skywest contracts with American Airlines, Inc. ("American") at Phoenix Sky Harbor International Airport to operate aircraft on certain routes under the auspices of American Eagle Airlines, Inc. ("American Eagle"). (*See* Doc. 55-3 at 5–6.) This contract does not provide for ramp services, which includes positioning the motorized passenger ramp alongside the aircraft and hooking up the air conditioning cart to the aircraft. (*Id.*) For this task, Skywest contracts with Piedmont Airlines, Inc. ("Piedmont"). (*Id.* at 4, 6.)

Piedmont employed Mr. Flores as a ramp agent at Sky Harbor Airport. (Doc. 55-1

---

[1] Although neither party requested oral argument, both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

at 6.) As a new employee, in September 2013, Mr. Flores attended a comprehensive training program administered by Piedmont. (*Id.*) This training included instruction on "all the necessary job roles for working out on the ramp from bringing the aircraft into the gate area, parking it, putting out safety measures around the aircraft, off-loading the aircraft as far as passengers and bags." (Doc. 55-2 at 3.) Piedmont's training reviewed the hazards of conditioned air and aircraft pressurization. (*Id.*) Piedmont also provides new ramp agents two weeks of on-the-job training, which Mr. Flores participated in. (*Id.*; Doc. 55-1 at 7–8.) Mr. Flores did not receive any training from Skywest. (Doc. 55-1 at 8.)

This case arises from an incident that occurred on September 2, 2016 at Sky Harbor Airport. (Doc. 55-4 at 2–4.) The subject aircraft, a CRJ-200, operated as an American Eagle flight. (Doc. 55-5 at 5.) The captain, first officer, and flight attendant were Skywest employees. (Doc. 55-6 at 4–5.) Piedmont provided the ground crew. (Doc. 55-3 at 5–6.) While the aircraft was parked at the gate, but before any passengers boarded, a Piedmont employee closed the doors to the aircraft. (Doc. 55-1 at 8.) A Piedmont employee then hooked up a conditioned air unit to the sealed aircraft. (*Id.*) During the discovery phase of this case, one of Piedmont's trainers testified that, "[i]f the aircraft is closed or sealed when you connect the conditioned air, it causes the cabin on the aircraft to pressurize the same as if it were in flight," which could prevent the doors from being opened. (Doc. 55-2 at 3–4.) To avoid pressurization, Piedmont instructed ramp agents that an aircraft door should be left slightly open when conditioned air is hooked up. (*Id.* at 4.)

That night, Skywest First Officer Brenden Flygare arrived at the aircraft and tried to, but could not, open the main cabin door. (Doc. 58-5 at 21; Doc. 58-1 at 77.) First Officer Flygare surmised that the aircraft was pressurized and that maintenance should depressurize the aircraft. (Doc. 58-5 at 22.) He knew that opening a door from a pressurized aircraft could be dangerous. (*Id.* at 18.) In his deposition, Mr. Flores testified that, upon his arrival to the ramp area "to start servicing the airplane," First Officer Flygare and Robert Morales, the Skywest flight attendant on duty, stood near the front of the plane waiting for someone to come open the aircraft's door. (Doc. 58-1 at 82–85; Doc 55-1 at 9–10.) After

discussion, Mr. Flores stated in his deposition that both Skywest employees "agreed that [Mr. Flores] should go open the plane and start working on it so they could actually leave on time." (Doc. 58-1 at 85.)

First Officer Flygare has a different recollection. He testified at his deposition that both he and Captain Bart Wensink told Mr. Flores not to open the door because the aircraft was pressurized. (Doc. 58-5 at 19–20.) First Officer Flygare also noted that Mr. Morales was standing "near" Captain Wensink and himself at the ramp area. (*Id.* at 28.)

Captain Wensink stated in his deposition that he was not present at the time of the accident and only arrived at the ramp area after Mr. Flores was on the ground injured. (Doc. 58-3 at 8, 17.) Mr. Morales testified that he was standing toward the front of the plane with First Officer Flygare when Mr. Flores was injured. (Doc. 58-4 at 10–13.) At his deposition, Mr. Morales stated that he saw First Officer Flygare talk to a ramp agent before the incident. (*Id.* at 15.) He does not know if this ramp agent was Mr. Flores. (*Id.*) Mr. Morales did not hear First Officer Flygare say anything about the aircraft's pressurization to anyone, including Mr. Flores's allegation that First Officer Flygare instructed him to open the aircraft's door. (*Id.* at 17.)

In the course of his duties, Mr. Flores tried to open the sealed service door, which was opposite from the main cabin door. (Doc. 55-1 at 9–10.) When Mr. Flores tried to open the pressurized door, it flung open and struck him in the head and face. (Doc. 55-4 at 2.) Mr. Flores sustained serious injuries from this accident. (Doc. 1-3 ¶ 17.) Mr. Flores contends he did not know the aircraft was pressurized before trying to open the service door. (Doc. 58-1 at 82–83.) Afterward, Skywest inspected and performed operation checks on the door and found no defects. (Doc. 55-5 at 4–6.)

## II.   PROCEDURAL HISTORY

Mr. Flores filed his Complaint in August 2018 asserting negligence and gross negligence in Arizona state court against American, American Eagle, Piedmont, and Skywest. (Doc. 1.) Shortly thereafter, the case was removed to this Court. (Doc. 1.) On July 10, 2019, American, American Eagle, and Piedmont moved for summary judgment.

(Doc. 41.) About a month later, Mr. Flores stipulated to dismiss American, American Eagle, and Piedmont. (Doc. 42.) On March 13, 2020, Skywest, the only remaining defendant, filed a Motion for Summary Judgment. (Doc. 55.) The Motion is now fully briefed. (Doc. 58, 62.)

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted). That said, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### IV.   DISCUSSION

#### A.   Mr. Flores's Previously Undisclosed Theories of Liability

Skywest contends that Mr. Flores's response to its Motion raises several legal theories that "have never been disclosed in Plaintiffs' MIDP or discovery responses." (Doc. 62 at 4.) These new theories attempt to pin liability on Skywest through (1) the doctrine of *respondeat superior*, (2) Federal Aviation Administration ("FAA") Regulation 91.13(b) and two Arizona statutes, A.R.S. §§ 28-8280(A) and 28-8273, and (3) a borrowed servant relationship with Piedmont employees. (Doc. 58.) Skywest objects to these previously

undisclosed theories, arguing that they "cannot play a role in the determination of this Motion." (*Id.* at 4, 6 n.2.) Based on Skywest's objection, the Court ordered Mr. Flores to file a sur-reply addressing this issue. (Doc. 65.)

Under Rule 8 of the Federal Rules of Civil Procedure, a civil complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted the "short and plain statement" requirement to mean that the complaint must "give defendant notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Also, the District of Arizona's General Order No. 17-08 requires the parties to provide "mandatory initial discovery responses," and it "sets forth the categories of information that must be provided." Gen. Order No. 17-08, at 2.[2] Specifically, General Order No. 17-08 directs that the parties "must provide relevant legal theories in response to paragraph B.4 below," which states, "[f]or each of your claims or defenses, state the facts relevant to it and the *legal theories* upon which it is based." *Id.* at 2, 5 (emphasis added).

The Complaint in this case barely alleges anything against Skywest. It states that Skywest "negligently failed to secure the airplane, and/or failed to ensure that all personnel working on it were properly trained." (Doc. 1-3 ¶ 14.) It also alleges that "Defendants had a duty requiring them to conform to a certain standard of care with respect to the Plaintiff, and Defendants breached that standard." (*Id.* ¶ 16.) Mr. Flores did not provide any additional, more specific theories of liability in his Complaint. When Skywest asked in an interrogatory for Mr. Flores to explain in detail the factual and legal bases for his claims in the Complaint, Mr. Flores did not disclose the three new theories advanced in the Response to Defendant's Motion for Summary Judgment. (Doc. 55-7.)

A new theory of liability may not be added at the summary judgment stage as it "would prejudice the defendant who faces different burdens and defenses under this [previously undisclosed] of liability." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292

---

[2] Although General Order No. 17-08 has expired, this case is still subject to its additional discovery obligations.

- 5 -

(9th Cir. 2000); *see also Skelton v. Arizona State Univ.*, No. CV-17-01013-PHX-GMS, 2019 WL 1077879, at *2 (D. Ariz. Mar. 7, 2019) (barring a plaintiff from bringing a new theory of liability in response to the defendants' motion for summary judgment).

The Court finds that Mr. Flores disclosed his *respondeat superior* theory, albeit indirectly, in his Complaint. (Doc. 1-3 ¶¶ 10, 14.) The Complaint demonstrates that Mr. Flores sued Skywest because of its employees' actions. (*Id.*) The Complaint's negligence claim against Skywest is predicated on Skywest's employees playing a part in Mr. Flores opening the aircraft's pressurized door. This is sufficiently specific to reasonably put Skywest on notice of the *respondeat superior* theory of relief.

Mr. Flores's sur-reply suggests that listing certain Piedmont employees as "pertinent to the case" and asking certain questions at depositions should have put Skywest on notice that he would use the borrowed servant theory at summary judgment.[3] (Doc. 66 at 3–4.) Listing "Employees of Piedmont" as a source of discoverable information in no way reveals that Skywest would be ambushed with a borrowed servant defense to summary judgment. (Doc. 66-2 at 4.) Vague deposition questions about Skywest's relationship to Piedmont employees also did not advance this theory. (Doc. 66 at 4.) There are no complaint allegations or discovery disclosures to put Skywest on notice that it would be liable for the acts of another entity's employees. Summary judgment is therefore granted in Skywest's favor on the borrowed servant theory.

As to the FAA regulation and Arizona statutes, Mr. Flores concedes that he "did not explicitly cite" to these statutes and regulation in the Complaint or during discovery. (*Id.* at 7.) Mr. Flores contends that his "failure to explicitly cite to state and federal regulations should not be considered a new theory of liability. Rather, the reliance on the state and federal regulations serve only to satisfy the duty element." (*Id.*) Mr. Flores also argues that certain vague discovery requests and MIDP disclosures provided notice to Skywest that he would raise these theories. (*Id.* at 4–7.) The Court is not persuaded by these arguments.

---

[3] "A borrowed servant relationship arises when an employer sends one of its employees to do some work for a separate business." *Tarron v. Bowen Machine & Fabricating, Inc.*, 225 Ariz. 147, 150 (2010) (citation omitted). This relationship is often "pursuant to a contract between the general and borrowing employers." *Id.*

There is no indication in the Complaint, or throughout discovery, that Mr. Flores would argue that a duty could have arisen through a FAA regulation or Arizona statutes. Looking at these disclosures separately or together does not provide an adequate basis to show that Skywest was reasonably notified of these new duty-based theories. These theories are therefore barred under *Coleman* and the MIDP, and summary judgment in Skywest's favor on these theories of liability is granted.

### B.  Negligence

The Court now addresses the merits of Mr. Flores's negligence claim.

#### 1.  Elements

A claim for negligence requires proof of four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) breach of that standard; (3) a causal connection between the breach and the resulting injury; and (4) actual damages." *Quiroz v. ALCOA Inc.*, 243 Ariz. 560, 563–64 (2018). A claim for gross negligence requires an additional showing of "[g]ross, willful, or wanton conduct." *Noriega v. Town of Miami*, 243 Ariz. 320, 326 (App. 2017) (alternation in original and citation omitted). The existence of a duty of care is an issue of law that the court will decide, whereas the other elements, including breach and causation, are typically factual issues reserved for the jury. *Gipson v. Kasey*, 214 Ariz. 141, 143 (2007).

#### 2.  *Respondeat Superior*

Under the doctrine of *respondeat superior*, "an employer is vicariously liable for 'the negligent work-related actions of its employees.'" *Kopp v. Physician Grp. of Ariz., Inc.*, 244 Ariz. 439, 441 (2018) (quoting *Engler v. Gulf Interstate Eng'g, Inc.*, 230 Ariz. 55, 57 (2012)). This extends to such acts only if the employee is acting within the scope of employment when the accident occurs. *Engler*, 230 Ariz. at 57–58. Because "someone else's fault is imputed to [the principal] by operation of law," *Wiggs v. City of Phoenix*, 198 Ariz. 367, 371 (2000), one of Skywest's agents must have been negligent toward Mr. Flores for Skywest to be liable. Mr. Flores argues that Skywest's employee, First Officer Flygare, knew that the aircraft was pressurized, understood the risks involved with opening

a pressurized aircraft, and had a duty to refrain from putting Mr. Flores in danger.[4] (Doc. 58 at 6–10.)

### 3. Duty of Care Owed by First Officer Flygare

A duty is an "obligation, recognized by law, which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 354 (1985). In *Gipson v. Kasey*, 214 Ariz. 141 (2007), the Arizona Supreme Court effected "a sea change in Arizona tort law by removing foreseeability from [its] duty framework," invaliding earlier precedents to the extent they relied on foreseeability to determine duty. *Quiroz*, 243 Ariz. at 565. Post-*Gipson*, a duty must be based either on (1) a preexisting special relationship between the parties, or (2) a relationship created by public policy considerations.[5] *Id.* at 565–66. Whether a duty exists "is a legal matter to be determined before the case-specific facts are considered." *Id.* at 564 (citation omitted). Absent a duty, "defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct." *Gipson*, 214 Ariz. at 143–44.

#### a. Special Relationship

Mr. Flores asserts that First Officer Flygare owed a duty to him because of certain special relationships. (Doc. 58 at 7–11.) "Duties based on special relationships may arise from several sources, including special relationships recognized by the common law, contracts, or 'conduct undertaken by the defendant.'" *Quiroz*, 243 Ariz. at 565 (citation omitted).

Mr. Flores first argues that First Officer Flygare's actions created a general duty to him because he instructed Mr. Flores to open the aircraft door. (Doc. 58 at 9–11.) Mr. Flores cites *Ontiveros v. Borak*, 136 Ariz. 500, 508–09 (1983), for the proposition that "the

---

[4] Skywest argues that "Mr. Flygare's testimony has not been submitted as evidence in opposition to this Motion and all citations to his testimony are unsupported." (Doc. 62 at 4.) Although Mr. Flores incorrectly cited First Officer Flygare's deposition several times, it has been submitted as an exhibit. (Doc. 58-5.) It will therefore be considered in resolving the Motion.

[5] Mr. Flores attempts to distinguish *Quiroz*. (Doc. 58 at 7.) The Court agrees with Skywest that this distinction is unneeded "as *Quiroz* analyzed the concept of duty in general." (Doc. 62 at 11.)

common law recognizes a duty to take affirmative measures to control or avoid increasing the danger from the conduct of others."[6] This single quotation does not represent the complete picture in that case, which involved dram shop liability. "The rationale for the common-law duty holding in *Ontiveros* was much more narrowly based on the relation of the licensed supplier of liquor and his patron." *Delci v. Gutierrez Trucking Co.*, 229 Ariz. 333, 338 (App. 2012); *see also Ontiveros*, 136 Ariz. at 511 n.4 ("We deal here with the obligation of a licensee to help control the conduct of others who are patrons of his establishment. Such duties are recognized where a 'special relationship exists between the actor and the third person.'"). *Ontiveros*'s reliance on the Restatement (Second) of Torts § 315 confirms that a special relationship, which is missing here, is needed for this affirmative duty to apply. And, the Arizona Supreme Court has held that relying on *Ontiveros*'s general language is not enough to create a duty absent a similar special relationship that would create this affirmative duty. *Quiroz*, 243 Ariz. at 575. In short, *Ontiveros* did not establish a presumed duty based on risk creation.

Nothing in the record suggests that Skywest itself, or through First Officer Flygare's conduct, created a special relationship with Mr. Flores similar to the one in *Ontiveros*. Without that special relationship, the "duty to take affirmative measures to control or avoid increasing the danger from the conduct of others" does not apply. *See Alcombrack v. Ciccarelli*, 238 Ariz. 538, 542–43 (App. 2015) (finding that *Ontiveros*'s affirmative duty did not apply when a similar relationship was not present).

Second, Mr. Flores contends that a landowner-licensee relationship existed between Skywest and himself. (Doc. 58 at 9–11.) Skywest disagrees with the landowner comparison, or that it was the "owner of the plane at issue." (Doc. 15 ¶ 2; Doc. 62 at 10.) It is true that a landowner-licensee relationship is a recognized special relationship that can establish a duty of care. *See Wickham v. Hopkins*, 226 Ariz. 468, 471 (App. 2011). For this

---

[6] This line in *Ontiveros* cites the Restatement (Second) of Torts § 315. 136 Ariz. at 509–10. Section 315 states that there is "no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless" a special relationship exists. *See also Ortiz v. Espinoza*, No. 2 CA-CV 2013-0081, 2013 WL 6571809, at *2 (Ariz. App. Dec. 12, 2013) (finding that no duty arises under § 315 absent some "special relation" between the parties).

to apply, Mr. Flores needs to show that Skywest is a landowner. Mr. Flores relies on a conclusory statement that the aircraft was "owned by Skywest," and cites deposition testimony where one of Skywest's employees stated that they "believe" Skywest owned the aircraft.[7] (Doc. 58-5 at 35; Doc. 58 at 7.)

Even after construing the evidence in the light most favorable to Mr. Flores, mere guesswork by one of Skywest's employees in his deposition does not establish a duty. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Velasco v. Bodega Latina Corp.*, No. CV-18-02340-PHX-ROS, 2019 WL 1787483, at *2 (D. Ariz. Apr. 24, 2019) (same). There is no other evidence in the record supporting the landowner-licensee argument, including the critical element that Skywest even owned the plane.[8] Still, even if owning an aircraft equates to owning real property, there is no evidence supporting Mr. Flores's argument that he was in the position of a licensee. Without establishing Skywest's ownership or Mr. Flores's status as a licensee, his argument collapses.

For these reasons, Mr. Flores has failed to assert a special relationship with Skywest or First Officer Flygare.

### b. Public Policy

The Court has already granted summary judgment in Skywest's favor on this issue because of Mr. Flores's untimely disclosure. *See supra* Section IV.A. Despite this, the Court separately concludes that Skywest owed no duty under the FAA regulation and Arizona statutes. Duties based on public policy generally find their roots in "our state and federal statutes and the common law." *Quiroz*, 243 Ariz. at 565. "A statute reflecting public policy may create a duty when a plaintiff 'is within the class of persons to be protected by the statute and the harm that occurred . . . is the risk that the statute sought to protect

---

[7] Skywest's attorney objected to this question for lack of foundation. (Doc. 58-5 at 35.)
[8] Mr. Flores does not make the argument that the landowner-licensee duty exists by virtue of Skywest leasing or renting the aircraft from another entity. Thus, the Court will analyze this argument only as it relates to ownership. *See United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006) ("Arguments not raised by a party in its opening brief are deemed waived").

- 10 -

against.'" *Id.* (quoting *Gipson*, 214 Ariz. at 146). Unlike duties based on special relationships, duties based on public policy do not necessarily require preexisting relationships. *Gipson*, 214 Ariz. at 145. Mr. Flores argues that First Officer Flygare, as a pilot, owed him a duty by virtue of a FAA regulation and certain Arizona statutes. (Doc. 58 at 8–9.) Based on this, Mr. Flores states that First Officer Flygare had, "at a minimum, an obligation to refrain from acting 'in a careless or reckless manner so as to endanger the life or property of another.'" (*Id.* at 9.) Skywest disputes that the FAA regulation and Arizona statutes even apply here. (Doc. 62 at 7–8.)

As a threshold matter, Skywest argues that federal law and FAA regulations preempt all aviation-related state law tort claims. (*Id.* at 7–10.) But the law is more nuanced than that. Federal law only preempts state law in the field of "aviation safety." *Montalvo v. Spirit Airlines*, *Inc.*, 508 F.3d 464, 470–74 (9th Cir. 2007). The term "aviation safety" is "limited to in-air safety."[9] *Elassaad v. Indep. Air, Inc.*, 613 F.3d 119, 127 (3d Cir. 2010). As the Third Circuit in *Elassaad* recognized, the "supervision of the disembarkation process" while the aircraft is stopped, the stairs had been lowered, and most passengers had disembarked "falls outside the bounds" of aviation safety. *Id.* at 127, 130–31. Here, the aircraft was at a complete stop, closed, and no one was onboard. Any injury incurred would be subject to state tort law. The Court therefore rejects Skywest's preemption argument.

The Court now turns to the merits of Mr. Flores's argument that First Officer Flygare owed him a duty based on public policy. First, he contends that First Officer Flygare must follow FAA Regulation 91.13(b), which sets forth "a general description of the standard required for the safe operation of aircraft." *Id.* at 129. This regulation provides:

> *Aircraft operations other than for the purposes of air navigation*. No person may operate an aircraft, other than for the purpose of air navigation, on any part of the surface of an airport used by aircraft for air commerce (including areas used by those aircraft for receiving or discharging persons or cargo), in a careless or reckless manner so as to endanger the life or

---

[9] *See Sierra Pac. Holdings, Inc. v. Cty. of Ventura*, 204 Cal. App. 4th 509, 515 n.4 (2012) (discussing *Elassaad*'s clarification that the use of the term "aviation safety" was "limited to in-air safety").

- 11 -

property of another.

14 C.F.R. § 91.13(b).

By its terms, this regulation applies only when a pilot is operating an aircraft. The definition of the term "operate" is critical. The regulation defines "operate" to mean "use, cause to use or authorize to use aircraft, for the purpose . . . of air navigation including the piloting of aircraft, with or without the right of legal control." 14 C.F.R. § 1.1. In response to comments made during the FAA's rulemaking procedure, the agency explained that the phrase "operate an aircraft other than for the purpose of air navigation" limits § 91.13 only to those acts "which impart some physical movement to the aircraft, or involve the manipulation of the controls of the aircraft such as starting or running an aircraft engine." Careless or Reckless Ground Operation of Aircraft, 32 Fed.Reg. 9640, 9640–41 (July 4, 1967).

Consistent with this, *Elassaad* held that an aircraft was not "operated" under § 91.13's meaning because the plane was at a complete stop, the stairs had been lowered, and most passengers had disembarked. 613 F.3d at 130–31. Here, like *Elassaad*, all actions related to this case occurred when the aircraft was at a complete stop, closed, and no one was onboard. First Officer Flygare was on the ramp awaiting to board the plane. What happened here did not involve the operation of the aircraft. For these reasons, the Court concludes that § 91.13 does not establish a duty.

Second, Mr. Flores contends that Arizona statutes impose a duty on First Officer Flygare. (Doc. 58 at 8–9.) Arizona Revised Statutes ("A.R.S.") § 28-8280(A), provides:

> A person who operates an aircraft in the air, on the ground or on the water in a careless or reckless manner that endangers the life or property of another is guilty of a class 1 misdemeanor. In determining whether the operation was careless or reckless, the court shall consider the standards for safe operation of aircraft prescribed by federal statutes or regulations governing aeronautics.

A.R.S. § 28-8280(A). Mr. Flores then cites A.R.S. § 28-8273, which states:

> A. A pilot is responsible for damage to a person or property

> that is caused by aircraft directed by the pilot or under the pilot's control and that results from the negligence of the pilot, either in controlling the aircraft or while giving instructions to another person.
> B. If the pilot is the agent or employee of another, both the pilot and the pilot's principal or employee are responsible for the damage.

A.R.S. § 28-8273.

Arizona Revised Statutes § 28-8280 incorporates the standards prescribed by federal statutes or regulations. As mentioned above, 14 C.F.R. § 91.13(b) does not apply. Moreover, even looking at the state statute, neither Skywest nor First Officer Flygare "operated" an aircraft within the statute's plain meaning. As to A.R.S. § 28-8273, neither Skywest nor First Officer Flygare "directed" the aircraft. The aircraft here was completely stopped and unmanned at the time of the incident. *See Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 16 n.3 (App. 2000) (finding that A.R.S. § 28-8273 did not apply because the property damage "was not 'caused by aircraft directed by the pilot' in the normal sense of those words"). It is telling that the Arizona Court of Appeals in *Ramsey* held A.R.S. § 28-8273 did not apply in a situation where a pilot damaged an aircraft's engine in mid-flight. *See id.* at 12, 16 n.3. Here, First Officer Flygare could not have directed the aircraft, as required by the statute, while standing outside of a closed, parked, and unmanned aircraft.

Accordingly, neither the FAA regulation nor the Arizona statutes provide a recognizable duty that extends to Skywest or First Officer Flygare.

### c.  Conclusion Regarding First Officer Flygare

As stated above, First Officer Flygare owed no duty to Mr. Flores. Because there was no duty, his theory of *respondeat superior* cannot survive and the Court need not address the remaining elements. *See Wickham*, 226 Ariz. at 471 ("A negligence action cannot be maintained absent a duty.") (citation omitted). Although the parties dispute whether First Officer Flygare instructed Mr. Flores to open the service door, that issue of fact is irrelevant because no duty existed between Mr. Flores and Skywest or its employee.

### 4. Duty of Care Owed by Skywest

Mr. Flores's negligence claim emanates from the proposition that one of Skywest's "agents had a legal duty to warn or refrain from instructing" him to open the service door under these circumstances. (Doc. 58 at 11.) Further, Mr. Flores contends that "[a]s an agent working within the scope of his employment, Defendant Skywest is liable for the actions of its agents." (*Id.*) As analyzed above, Skywest does not have imputed liability through First Officer Flygare. To the extent Mr. Flores's theories against First Officer Flygare were directed against Skywest itself, those arguments still fail to identify a recognizable duty.

### C. Gross Negligence

Mr. Flores asserts gross negligence in his Complaint. (Doc. 1-3.) Skywest argues that his gross negligence claim fails because no duty was owed to him. (Doc. 58 at 5–6, 9.) Mr. Flores did not respond to this argument. Skywest is therefore entitled to summary judgment on this basis alone. *See* LRCiv 7.2(i). That notwithstanding, the Court will address the merits. "To establish a claim of gross negligence, the plaintiff must prove, among other things, the existence of a duty of care." *Hogue v. City of Phoenix*, 240 Ariz. 277, 280 (App. 2016). Here, Mr. Flores failed to prove that his simple or gross negligence claims established that Skywest owed any duty to him. For the same reasons, his gross negligence claim fails.

## VI. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Skywest's Motion for Summary Judgment. (Doc. 55.) The Clerk of the Court shall enter judgment in Skywest's favor on all of Plaintiffs' remaining claims and close this case.

Dated this 10th day of November, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge